**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**GERALD ZEOLI**                                                      **PLAINTIFF**

**V.**                                **No. 4:22-cv-00848-JTK**

**COMMISSIONER of
SOCIAL SECURITY ADMINISTRATION**                          **DEFENDANT**

## ORDER

### I.  Introduction:

Plaintiff Gerald Zeoli applied for disability benefits on February 5, 2020, alleging disability

beginning on March 29, 2019. (Tr. at 14). The claim was denied initially and upon reconsideration.

*Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Zeoli's application

on November 19, 2021. (Tr. at 27). The Appeals Council denied his request for review. (Tr. at 1).

The ALJ's decision now stands as the final decision of the Commissioner, and Zeoli has requested

judicial review.

For the reasons stated below, the Court[1] affirms the ALJ's decision.

### II.  The Commissioner's Decision[2]:

The ALJ found that Zeoli had not engaged in substantial gainful activity since March 29,

2019, the alleged onset date. (Tr. at 16). At Step Two, the ALJ found that Zeoli had the following

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge. *Doc. 2*.

[2] Using a five-step sequence, the ALJ determines: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)-(g).

severe impairments: degenerative disc disease of the lumbar spine status-post laminectomy, cervical stenosis status-post fusion, post-laminectomy syndrome, sacroiliitis, diabetes mellitus, hyperlipidemia, and obesity. *Id*.

After finding at Step Three that Zeoli's impairments did not meet or equal a listed impairment, the ALJ determined that Zeoli had the residual functional capacity ("RFC") to perform work at the sedentary exertional level, with additional restrictions. (Tr. at 18). The ALJ found that Zeoli could: (1) stand or walk a combined total of 2 hours in an 8-hour workday with normal breaks; (2) sit for a total of 6 hours in an 8-hour workday; (3) lift, carry, push, or pull 10 pounds occasionally and up to 10 pounds frequently; (4) occasionally reach overhead bilaterally; (5) stoop, kneel, crouch, crawl, and climb ramps or stairs occasionally; (6) never climb ladders, ropes, or scaffolds; and (7) avoid concentrated exposure to excessive vibration. *Id*.

At Step Four, the ALJ compared Zeoli's RFC to the demands of his past work and determined that Zeoli was capable of performing his past relevant work as a department manager as that work is generally performed in the national economy. (Tr. at 26). Therefore, the ALJ concluded that Zeoli was not disabled. (Tr. at 27).

## III. <u>Discussion</u>:

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we do take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

**B. Zeoli's Arguments on Appeal**

Zeoli contends that substantial evidence does not support the ALJ's decision to deny benefits. He argues that the ALJ erred by discounting the credibility of his subjective complaints and by formulating an RFC that failed to account for his sitting limitations. He also claims that the ALJ who decided his case is biased against social security claimants and that the entire disability adjudication process is unconstitutional. For the following reasons, the Court AFFIRMS the decision of the Commissioner.

1. <u>RFC and Credibility Findings</u>

"A claimant's RFC is 'the most' that the claimant can do in a work setting despite [his] limitations." *Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022) (quoting 20 C.F.R. § 404.1545(a)(1)). A claimant bears the burden of proof to establish his RFC. *Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019). "An ALJ determines a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others,

and an individual's own description of [her] limitations." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quotations omitted). Although the RFC must be supported by some medical evidence, "the RFC is a decision reserved to the agency such that it is neither delegated to medical professionals nor determined exclusively based on the contents of medical records." *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020).

Part of determining a claimant's RFC requires the ALJ to assess the credibility of the claimant's subjective complaints. The ALJ's credibility analysis is guided by the *Polaski* factors, which include "the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions." *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010) (quotation omitted) (citing *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984)). "Credibility determinations are the province of the ALJ, and as long as good reasons and substantial evidence support the ALJ's evaluation of credibility, we will defer to [the ALJ's] decision." *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (internal quotation omitted).

The ALJ properly considered the relevant evidence and determined that Zeoli's impairments did not prevent him from performing the sitting requirements of sedentary work. The ALJ's RFC finding is supported by objective medical evidence, Zeoli's admitted activities of daily living, and statements from medical professionals.

The objective medical evidence shows that Zeoli has a decades-long history of neck and low back pain. (Tr. at 20, 927). In May 2018, a cervical spine MRI revealed cervicalgia with degenerative disc disease at C3-C5 with severe stenosis. (Tr. at 888-89). Zeoli underwent C5-C6 discectomy and fusion surgery in October 2018. (Tr. at 955-56). Lumbar MRI imaging revealed multilevel disc pathology and facet arthropathy with malalignment, most pronounced at L4-L5

with marked facet arthropathy and a disc bulge resulting in severe central canal stenosis and impingement of the thecal sac and nerve roots. (Tr. at 957-58). In March 2019, he underwent a posterior lumbar laminectomy at L4-L5. (Tr. at 953-54). Although Zeoli complained of severe lower back pain following the procedure, he reported that sitting relieved his pain symptoms, and his exam findings were normal.[3] (Tr. at 928-35).

Zeoli attended physical therapy in 2019 and reported improvement in pain and function, including increased sitting tolerance. (Tr. at 902-20). He reported in June 2019 that he had "recovered nicely from his back surgery" and had been more active recently, including bicycling and swimming 3-4 times a week. (Tr. at 1070-71). In July 2019, he reported a flare-up of pain that increased with sitting for long periods of time, but his doctor provided no functional restrictions and encouraged Zeoli to work back to normal daily activities as tolerable. (Tr. at 1222). In October 2019, he reported that his pain was improving with therapy and that he was doing well overall. (Tr. at 1060). By the time he was discharged from therapy in November 2019, he had minimal difficulty with prolonged standing and walking, and no difficulty bending or stooping. (Tr. at 1104-05).

In 2021, Zeoli was again treated for back and neck pain. On examination, his lumbar facet joints and paraspinal muscles were tender to palpation, while straight leg raise tests and facet loading tests were abnormal. (Tr. at 1306). He was prescribed gabapentin and participated in physical therapy in May-June 2021. (Tr. at 1289-1301). Exams in August and September 2021 showed restricted lumbar extension that elicited typical bilateral radicular leg symptoms, but gabapentin and physical therapy provided some relief. (Tr. at 1361-62, 1367). In October 2021,

---

[3] Normal clinical findings may undermine the credibility of a claimant's subjective complaints and support the ALJ's decision to deny benefits. *See Halverson*, 600 F.3d at 933.

Zeoli continued to complain of lower back pain that radiated into his legs down to the knee. (Tr. at 1328). MRI imaging showed degeneration and stenosis at L4-L5, and an additional lumbar procedure was recommended at this level due to significant spinal instability. *Id*. However, this was the only level that showed significant stenosis. *Id*. On examination, Zeoli had full range of motion in the cervical spine, his gait was normal with good coordination and balance, his hips showed good strength and full range of motion without pain, and his straight leg raise tests were negative. *Id*.

The medical evidence certainly supports finding some degree of pain and limitation. However, in light of the many normal exam findings and reports of symptom relief after treatment, the evidence is not so extreme as to clearly preclude Zeoli's ability to do a limited range of sedentary work. The RFC findings are supported by a statement from Zeoli's physical therapist, N. Mark Wagner, PT, who indicated that Zeoli had no problems sitting in a chair and could in fact sit for 6 hours out of an 8-hour workday. (Tr. at 1310-11). And the RFC is consistent with prior administrative medical findings from state agency reviewing physicians who found that Zeoli was actually capable of performing light work—and thus even less limited than what the ALJ ultimately found. (Tr. at 75-77, 90-94).

Zeoli's admitted activities also support the RFC determination, and provide good reasons for the ALJ to discount the credibility of his subjective complaints. Although Zeoli told the ALJ that he uses a walker and has a limited ability to walk, medical records from May 2019 show that he was walking half a mile twice a day without pain or difficulty, and only reported pain after walking for longer than two miles. (Tr. at 904). He reported walking several miles at the beach one day, after which he reported feeling stiffness but no pain. (Tr. at 908). He reported going to the zoo and being on his feet for four hours with rest breaks, grocery shopping on his feet for an

hour, and swimming. (Tr. at 912, 914). In October 2019, he traveled by plane to and from Alaska, where he took a bus tour. (Tr. at 56-58). He also reported going hiking with no complaints. (Tr. at 1106). A consultative exam in August 2020 determined that no assistive device was medically necessary to ambulate. (Tr. at 1126). In May 2021 he reported chasing his dogs. (Tr. at 1300). These activities suggest that Zeoli is capable of performing the sitting and standing/walking requirements of a limited range of sedentary work.

Zeoli contends that the ALJ failed to provide a good reason for discounting his claims of disabling pain so severe that it impacts his ability to focus on work tasks. The Court finds no error in the ALJ's credibility evaluation, which was guided by the relevant *Polaski* factors. The ALJ noted Zeoli's own reports of being able to drive and having no memory or concentration problems at his 2020 consultative exam. (Tr. at 22, 1126). He also noted that Zeoli had voluntarily reduced the dosage of medications he was taking in order to reduce or eliminate side effects during the daytime. (Tr. at 25, 47, 51-52). Zeoli's extensive admitted activities and consistently normal mental status examinations undercut his complaints and provide substantial evidence to support the ALJ's credibility assessment.

## 2. ALJ Bias

Zeoli claims that the ALJ who decided his case is generally biased against disability claimants, and that the agency's failure to "provide a hearing and decision by an unbiased decision maker" violated his constitutional rights to due process and equal protection. The only evidence he presents to support this claim of bias is statistical data showing that the ALJ typically approves disability claims at lower-than-average rates.

ALJs are presumed to be unbiased decision makers. *Perkins v. Astrue*, 648 F.3d 892, 902 (8th Cir. 2011). To rebut this presumption, a claimant must produce sufficient evidence to

demonstrate a "conflict of interest or some other specific reason for disqualification." *Schweiker v. McClure*, 456 U.S. 188, 195 (1982). Statistical evidence of an ALJ's low claim approval rate, without more, fails to meet that burden. *Perkins*, 648 F.3d at 902–03. Furthermore, Zeoli does not point to any evidence showing that the ALJ's alleged bias impacted the decision in this case, and the Court has found that the decision is supported by substantial evidence.

### 3. Declaratory Judgment

Finally, Zeoli raises a host of complaints against the agency and asks the Court to issue a judgment declaring that the entire system for determining disability is unconstitutional. The Court declines the invitation. The regulations governing the process are well within the agency's exceptionally broad rulemaking authority under the Social Security Act. 42 U.S.C. § 405(a); *Bowen v. Yuckert*, 482 U.S. 137, 145 (1987). The Court's review of these regulations is limited to determining whether they are arbitrary or capricious and whether they exceed the Commissioner's authority. *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Zeoli has not challenged any specific statute, regulation, or policy, and he has failed to establish unconstitutionality in his individual case. The Court sees no reason to declare the entire system unconstitutional.

## IV. Conclusion:

For the reasons stated above, the Court concludes that the ALJ applied proper legal standards and substantial evidence on the record as a whole supports the ALJ's decision. The finding that Zeoli was not disabled within the meaning of the Social Security Act is hereby AFFIRMED. Judgment will be entered for the Defendant.

IT IS SO ORDERED this 18th day of July 2023.

_____
UNITED STATES MAGISTRATE JUDGE